IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY NATHAN LEWIS,

                    Plaintiff,                          No. 03:13-cv-00992-HZ

      v.

FEDERAL AVIATION ADMINISTRATION,      OPINION & ORDER
and FAA ADMINISTRATOR MICHAEL
HUERTA,

                  Defendants.

Jeffrey N. Lewis
28242 S. Salo Road
Mulino, Oregon 97042

      Plaintiff Pro Se


S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon

/ / /

/ / /


1 - OPINION & ORDER

Kevin Danielson
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204, 2902

      Attorneys for Defendants

HERNANDEZ, District Judge:

      Plaintiff Jeffrey Lewis brings this Freedom of Information Act (FOIA) action against the Federal Aviation Administration (FAA) and its administrator Michael Huerta.  Plaintiff contends that Defendants (1) improperly applied certain FOIA exemptions to redact information from documents produced by Defendants to Plaintiff, (2) failed to timely respond to his FOIA appeals, and (3) failed to timely respond to his FOIA requests.

      Both Plaintiff and Defendants move for summary judgment.  For the reasons explained below, I grant Defendants' motion in part and deny it in part.  I grant Plaintiff's motion in part and deny it in part.

BACKGROUND

      Plaintiff worked as an air traffic controller for the FAA until he was terminated in November 2008.  Pl.'s Aug. 11, 2014 Decl. [ECF 31] at ¶ 3.  Since then, he has filed dozens of FOIA requests with the FAA seeking a variety of documents.  Id. at ¶ 6; see also Kreischer Affid. at ¶ 6 (noting that beginning in Fiscal Year 2007 to the present, Plaintiff has filed 233 initial FOIA requests and 69 administrative appeals).  In his Complaint, Plaintiff challenges responses to nine appeals, the failure to make a timely determination of three appeals, and the failure to make a timely determination of two requests.  Compl. at 3-4.[1]

_____

    [1] In an August 8, 2013 document entitled "Plaintiff's Memorandum Presenting Details of His Complaint," [ECF 7] Plaintiff clarified that one of the FOIA requests listed under his second

2 - OPINION & ORDER

The FAA produced records in response to Plaintiff's requests, but redacted information it considered to be exempt from production under 5 U.S.C. § 552.  Specifically, it relied on exemptions for (1) individual personal privacy, (2) law enforcement purposes, and (3) attorney-client, deliberative process, and work-product privileges.  In regard to Claim I, the litigation requires a determination of whether the FAA's application of those exemptions was proper.  As to the other claims, the issues as raised in the Complaint are whether the FAA made a timely response to an initial request or an appeal.  This Court held oral argument on the motions on November 17, 2014.  At oral argument, Plaintiff orally dismissed all claims except his challenges to two particular FOIA requests: FOIA Request No. 2012-2082 and FOIA Request No. 2012-7031.  Thus, this Opinion addresses only Defendants' responses to those two requests.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

---

claim, alleging a failure to timely respond to an appeal, belongs instead under the first claim, alleging improper redactions. Pl.'s Aug. 8, 2013 Mem. at 28 n.37 (noting FOIA Request No. 2012-7031 should be listed under Claim I instead of under Claim II).  He also clarified that a different request listed under Claim I alleging improper redactions should have been listed under Claim II alleging failure to timely respond to his appeal.  Id. (noting that FOIA Request No. 2012-6573 should have been listed under Claim II instead of Claim I).

3 - OPINION & ORDER

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

I.  Freedom of Information Act

Congress enacted the FOIA to "facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The FOIA is a broad disclosure statute which evidences a strong public policy in favor of public access to information in the possession of federal agencies. Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1082, 1085 (9th Cir. 1997); see also Milner v. Dep't of Navy, 131 S. Ct. 1259, 1262 (2011) (FOIA grants access to government archives for public dissemination of "official information long shielded

4 - OPINION & ORDER

unnecessarily from public view") (internal quotation marks omitted).

Under FOIA, an agency must make government records available to the public upon a properly made request. 5 U.S.C. § 552(a)(3)(A). However, the agency need not disclose documents or information falling within any of nine statutory exemptions. 5 U.S.C. § 552(b)(1)-(9). Because of the "strong presumption in favor of disclosure," the exemptions are narrowly construed and the agency bears the burden of justifying the withholding of information under an exemption. Lahr v. Nat'l Transp. Safety Bd. 569 F.3d 964, 973 (9th Cir. 2009).

To meet its burden of establishing that an exemption applies and that it properly withheld a document, agencies typically submit a declaration, or Vaughn index, that identifies the documents withheld, identifies the FOIA exemption, and gives a particularized explanation of how the exemption applies to each document. Lahr, 569 F.3d at 989 (citing Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)). The Vaughn index may also contain brief or categorical descriptions in order not to reveal the information the agency wants to protect. ACLU v. CIA, 710 F.3d 422, 432 (D.C. Cir. 2013) (noting that the "district court has considerable latitude to determine [the] requisite form and detail [of the Vaughn index] in a particular case"). An agency may submit a declaration in combination with, or in lieu of, a Vaughn index. Id. The materials provided by the agency may take a variety of forms, provided they give the court a reasonable basis upon which to evaluate the claimed exemption. Id. at 433.

II. Declarations and Vaughn Index in this Case

In support of their motion for summary judgment, Defendants rely on Exhibit 1 to the Declaration of Kevin Danielson which contains copies of all the FOIA requests at issue in this case. Additionally, Defendants submit the Declaration of Jeb Kreischer, a FOIA Management

Analyst at the FAA.  Kreischer's Declaration provides explanations of the types of records requested by Plaintiff and, by request number, an explanation of the FAA's response and the justification for its exemptions.  Attached as Exhibit 1 to Kreischer's Affidavit is the FAA's <u>Vaughn</u> index.

Plaintiff relies on his own August 11, 2014 Declaration to which forty-three pages of documents are appended.  The documents are not identified or authenticated.  Some appear to have editorial comments written on them.  Plaintiff also refers to his August 8, 2013 Memorandum which consists of fifty-eight pages, with an additional 205 pages in exhibits.  None of the exhibits in the August 8, 2013 Memorandum have been authenticated.  He also submitted a response to Defendant's motion which asserts facts unsupported by a declaration, deposition, or authenticated exhibits.  Finally, he relies on the affidavit of a current FAA employee, Don Hiebert.  Despite Plaintiff's failure to properly identify or authenticate the documents submitted, I have nonetheless reviewed and considered them.

III.  Relevant Exemptions

Defendants rely on three different exemptions in support of the agency's refusal to provide completely unredacted copies of the requested documents.  I address the general standards for each of these three exemptions here.

A.  Exemption 6 - Personal Privacy

Under 5 U.S.C. § 552(b)(6), an agency is allowed to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  In a 2013 case, the Ninth Circuit explained that the court asks "two questions in deciding whether an agency has properly withheld records or information under

Exemption 6." Prudential Locations, LLC v. U.S. Dep't. of Hous. & Urban Dev., 739 F.3d 424, 429 (9th Cir. 2013). First, the court asks if "the document qualifies under the heading of 'personnel and medical files and similar files.'" Id. (quoting section 552(b)(6)). Second, the court asks "whether production of the document, or information contained therein, 'would constitute a clearly unwarranted invasion of personal privacy.'" Id. (quoting section 552(b)(6)).

      1. "Similar Files"

      Exemption 6 was "'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982) (quoting H.R.Rep. No. 89–1497, at 11, reprinted in 1966 U.S.C.C.A.N. 2418, 2428). "Information unrelated to any particular person presumably would not satisfy the threshold test." Id. at 602 n. 4, 102 S. Ct. 1957. The Supreme Court has concluded that the phrase "similar files" in Exemption 6 has a "broad, rather than a narrow, meaning." Id. at 600, 102 S. Ct. 1957.

Id.; see also Kowack v. U.S. Forest Serv., 766 F.3d 1130, 1133 (9th Cir. 2014) (noting that the court has "defined 'similar files' broadly to include 'records containing information that applies to particular individuals'" and noting that a witness's statement about misconduct observed in the workplace qualifies as a "similar file" because it "'contains information that applies to particular individuals'") (quoting Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv., 524 F.3d 1021, 1024 (9th Cir. 2008)).

      2. "Clearly Unwarranted Invasion of Personal Privacy"

If the requested documents meet the "personnel and medical files and similar files" requirement of Exemption 6, the court must determine whether disclosure of the information constitutes "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); Forest Serv. Emps., 425 F.3d at 1024. To make that determination, the court "must balance the privacy

7 - OPINION & ORDER

interest protected by the exemptions against the public interest in government openness that would be served by disclosure." <u>Lahr</u>, 569 F.3d at 973.  This balancing requires an inquiry into both the privacy and public interests at issue.

a.  Privacy Interest

The "agency must show that some nontrivial privacy interest is at stake." <u>Prudential Locations</u>, 739 F.3d at 430 (internal quotation marks and emphasis omitted).  "A broad range of personal privacy interests are cognizable under FOIA, including under Exemption 6." <u>Id.</u> (noting further that the Supreme Court "has emphatically rejected a cramped notion of personal privacy.") (internal quotation marks omitted).  "Individuals not only have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma," "[t]hey also have a privacy interest in simply 'keeping personal facts away from the public eye.'" <u>Id.</u> at 431 (quoting <u>U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press</u>, 489 U.S. 749, 769 (1989)). "[P]rivacy encompass[es] the individual's control of information concerning his or her person." <u>Reporters Comm.</u>, 489 U.S. at 763.

b.  Public Interest

The Supreme Court

> has narrowly defined the public interest that is cognizable in a FOIA balancing: "The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to."

<u>Prudential Locations</u>, 739 F.3d at 433 (quoting <u>U.S. Dep't. of Defense v. Fed. Labor Relations Auth.</u>, 510 U.S. 487, 497 (1994)).  Revealing the identity of a private individual does not further the public interest unless it casts light on the conduct of the government[.]" <u>Id.</u>

8 - OPINION & ORDER

B.  Exemption 7(C) - Law Enforcement Investigation

Exemption 7 generally protects records and information compiled by the government for law enforcement purposes.  5 U.S.C. § 552(b)(7).  Six specific circumstances are identified in section 552(b)(7)(A) - (F).  Defendants rely on Exemption 7(C) which protects the following material: "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C).

Exemption 7 does not exempt internal agency investigations where the agency, acting as the employer, "'simply supervises its own employees.'" Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 27 (D.D.C. 2012) (quoting Stern v. FBI, 737 F.2d 84, 89 (D.C. Cir. 1984)).  However, Exemption 7 does apply when an agency investigates its own employees and the focus is on "specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." Id. (internal quotation marks omitted).  "Exemption 7 is thus triggered when the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Id. (internal quotation marks omitted).

Exemption 7(C), like Exemption 6, recognizes a personal privacy interest.  The court's balancing inquiry is the same as it is for Exemption 6: "to determine whether a record is properly withheld [under Exemption 6 or Exemption 7(C)], we must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." Lahr, 569 F.3d at 973.

But, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reporter's Comm. 489 U.S. at 756.  "First, Exemption 6 requires

that the invasion of privacy be 'clearly unwarranted,' whereas Exemption 7(C) requires only that the invasion be 'unwarranted.'" Prudential Locations, 739 F.3d at 435. "Second, Exemption 6 requires a disclosure that 'would constitute' an invasion of privacy, whereas Exemption 7(C) requires only that a disclosure 'could reasonably be expected to constitute' an invasion of privacy." Id. "In other words, although both exemptions require the court to engage in a similar balancing analysis, they differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." Lahr, 569 F.3d at 974 (internal quotation marks omitted).

C.  Exemption 5

Exemption 5 provides that an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption protects from production those documents "normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). Additionally, Exemption 5 encompasses "a 'deliberative process' privilege." Dep't of the Interior v. Klamath Water Users Protective Assoc., 532 U.S. 1, 8 (2001).

For Exemption 5 to apply, the government agency must be the source of the document, and the information must "fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency." Id.

IV.  Discussion of Particular FOIA Requests

A.  FOIA Request No. 2012-2082

In this December 15, 2011 request, Plaintiff sought documents related to an "operational error" that occurred at the Camarillo Air Traffic Control Tower on July 25, 2010. Kreischer

Affid. at ¶ 20(a); Danielson Decl., Ex. 1 at 13.  Plaintiff sought three types of documents and a recording: (1) a copy of a recording made at the location on that date; (2) a copy of all interviews of all FAA personnel working in the cab at the time the local controller attempted to cancel takeoff clearance; (3) a copy of "releasable portions" of Air Traffic Safety Action Program (ATSAP) reports related to the incident; and (4) emails and written correspondence to any FAA officials related to investigating or drawing conclusions related to the incident.  Id.

The initial request was assigned to five different FAA offices, but at the time he filed this litigation, only one had responded by providing several responsive records with portions withheld under Exemption 6.  Kreischer Affid. at ¶¶ 20(b), 20(c).  In supplemental correspondence, Plaintiff received records responsive to requested items (2) and (4), with some redactions made pursuant to Exemptions 5 and 6.  Id. at ¶¶ 20(d), 20(k).[2]  The agency required the individuals and offices that would be expected to have records responsive to requested items (2) and (4) to search their emails and files.  Kreischer Affid. at ¶ 20(k).  All responsive records located in response to these searches have been provided to Plaintiff.  Id.  Although in his own motion Plaintiff states that he seeks copies of "all as yet undisclosed emails for the listed FAA officials," Pl.'s Mot. for Summ. Jdgmt. at 2, he fails to create an issue of fact as to the non-existence of any other responsive documents.

The documents responsive to requested items (2) and (4) from which information was redacted are FAA Documents 1646, 1648, and 1666-72.  Kreischer Affid. at ¶ 20(k).  Plaintiff

_____

[2]  One additional record was located and is currently being provided to Plaintiff. Kreischer Affid. at ¶ 20(k) n.6.  Additionally, in response to requested item (1), Kreischer states the agency inadvertently omitted the CD containing the recording when providing Plaintiff with the supplemental correspondence.  Id. at ¶ 20(d).  It has agreed to provide the CD to Plaintiff "without delay."  Id.

makes no particular argument about the redactions to the documents sought in requested items
(2) or (4). In response to Defendants' motion, Plaintiff states that the FAA has produced most of
the records that were sought in this FOIA request with the exception of the ATSAP report. Pl.'s
Resp. at 8. In his own motion, he states that he seeks minimally redacted copies of the ATSAP
filings related to this incident. Pl.'s Mot. for Summ. Jdgmt. at 2. And, at oral argument, Plaintiff
addressed only the ATSAP report. Thus, based on the filings, I construe Plaintiff's objection as
directed only to the ATSAP report and not to the partially redacted documents responsive to
requested items (2) or (4).

As to requested item (3), Kreischer explains that the records requested constitute an
"ATSAP Report" and the agency has withheld its production to Plaintiff. Kreischer Affid. at ¶¶
20(d), (3). ATSAP is designed to encourage confidential, voluntary reporting of air traffic
related safety and operational concerns, without fear of reprisal or punitive action. Id. at ¶ 20(e).
"Under the program, the FAA can learn about and address aviation safety hazards of which it was
unaware or more fully understand and implement corrective measures for events or safety issues
made known by it through other means." Id. To encourage voluntary, confidential reporting, and
to maintain the integrity of the ATSAP program, the content of any report concerning an aviation
safety or security matter submitted by a qualified participant and the name of the submitter are
not publicly disclosed. Id. As stated by Kreischer, "[i]n essence, the FAA promises
confidentiality to these submitters." Id.

In applying Exemption 6 to this document, the agency argues that because ATSAP
reports are submitted voluntarily by an individual and contain the observations of the submitter,
they are records that apply to a particular individual and thus, clearly constitute "similar files."

Thus, the threshold for considering the application of Exemption 6 has been met. Next, the agency argues that the submitter has an expectation of privacy because of the confidential nature of the ATSAP program. As a result, Defendants continue, the disclosure of any portion of an ATSAP report necessarily intrudes on an expectation of privacy. Defendants represent that an ATSAP report contains the observations of the submitter and will necessarily include specific details of a particular incident either involving or witnessed by the submitter. Kreischer Affid. at ¶ 20(h). As such, Defendants contend, if the submitter's identity were disclosed, embarrassment and/or damage to the submitter's professional prospects or reputation, or retaliation from colleagues or management, are reasonably foreseeable. Accordingly, Defendants argue, an individual who submits an ATSAP report has a very significant privacy interest in keeping his or her identity confidential.

In terms of the public interest, in his initial FOIA request, Plaintiff stated that he understands that agency officials have likely failed to properly investigate an operational error and that he was "initiating a journalistic research project to assess the details of this [operational error] and subsequent actions and inactions." Danielson Decl., Ex. 1 at 13. In response to Defendants' summary judgment motion, Plaintiff suggests that he is concerned with FAA officials concealing errors. Pl.'s Resp. at 8, 11. As I understand Plaintiff's request, he seeks to demonstrate that there was an operational error and that the agency attempted to conceal it.

Kreischer states that based on records already released, the public knows that an ATSAP report was filed related to this incident. Kreischer Affid. at ¶ 20(j). He also states that based on "other records released in connection with this request," the public is aware that the FAA has thoroughly investigated the incident. Id. Thus, Defendants argue that on balance, the personal

privacy of the individual submitting the ATSAP report and his or her expectation that it was

being submitted privately and anonymously outweighs the public interest.  Further, although the

agency considered if it were possible to redact personal identifying information and release the

remainder of the report, it concluded that production of a redacted report would be inadequate to

protect the submitter's privacy because the specific details contained in the report would be

generally known to the submitter's colleagues.  Id.  According to Defendants, because it is

reasonably foreseeable that release of these details would allow the identity of the submitter to

become known, the complete report must be withheld to protect the submitter from an

unwarranted invasion of personal privacy.[3]

I agree with Defendants that the document is a "similar file" and that the submitter has a

substantial privacy interest in keeping his/her identity confidential.  Plaintiff does not appear to

make arguments to the contrary on those points.

As to the public interest, in its Reply Memorandum, Defendants note that it already

released in full an August 2, 2011 Memorandum related to a complaint alleging that an

operational error at the Camarillo Air Traffic Control Tower on July 25, 2010 was not reported.

Defs.' Reply at 3.  Defendants attach a copy of that August 2, 2011 Memorandum to their Reply

Memorandum.  Defs.' Reply, Attchmt. 1.

The August 2, 2011 Memorandum indicates that it was sent by Dianee Bebble, Manager

---

[3]  Defendants note that on May 15, 2014, the type of information at issue here in regard to
the ATSAP report is now exempt from disclosure under 49 U.S.C. § 40123 and 14 C.F.R. §
193.7.  Defendants concede that this provision is not retroactive and thus, does not apply here,
but, the fact that this type of document has now been determined to be exempt provides context
and demonstrates the FAA's belief that the protection of the identity of an ATSAP submitter is
necessary not only from a FOIA perspective but because the protection is also inextricably linked
to the integrity of the ATSAP Voluntary Reporting Program.

of the Air Traffic Operations Oversight Division, AOV-100, to Anthony Ferrante, Director of
AOV-1. Id. at 1. It was prepared by Keith Lindsey, Manager of the AOV Western Operations
Branch, AOV-201, and concerned the "Report of Investigation: FAA Employee Complaint,
Camarillo ATCT." Id.

It is a five-page, mostly singled-spaced document and concerns a complaint made by Don
Hiebert, a controller at the Camarillo Air Traffic Control Tower, concerning a potentially un-
reported operational error alleged to have occurred on July 25, 2010. Id. The August 2, 2011
Memorandum discusses the allegation by Hiebert (which includes a detailed description of the
alleged operational error and the employees involved), the facts yielded by the investigation, and
concludes that it could not be conclusively determined whether an operational error did or did not
occur. Id. at 2. It also includes a chronology of the reports made about the incident and the
investigations which occurred, including the independent investigation reported in the August 2,
2011 Memorandum by "AOV." Id. at 3. It repeats what was contained on the audio recording as
well as the information obtained from personnel interviews. Id. at 4.

Following oral argument, Defendants submitted a copy of the ATSAP report to the Court,
in camera. It is a two-page document identified as FAA 1673-A - 16730B. Given the strong
personal privacy interest at stake for the submitter of the ATSAP report and the fact that the
August 2, 2011 Memorandum, with no redactions, has been made to public, Defendants are
justified in withholding the production of the ATSAP report under Exemption 6 because the
privacy interest outweighs the public's need to have this particular report. The previously
produced August 2, 2011 Memorandum provides more than sufficient information about the
incident, including both the description of the alleged operational error and an allegation that the

15 - OPINION & ORDER

FAA failed to thoroughly investigate it.  Moreover, while an assurance of confidentiality is not determinative, it is a relevant factor in assessing whether the individual has a protected privacy interest.  Prudential Locations, 739 F.3d at 431-32.  My review of the ATSAP report confirms that if it were provided, the person who made the report could be identified because the document contains, in addition to information already in the public domain, the position of the person who submitted the report.  As Defendants note, that person could be identified by obtaining a roster of employees who worked at that facility on that date and time.  On balance, the privacy interest at stake outweighs the public interest in obtaining the ATSAP Report. Defendants are entitled to summary judgment in regard to Plaintiff's FOIA Request No. 2012-2082.

B.  FOIA Request No. 2012-7031

In this July 23, 2012 request, Plaintiff sought the following information related to a specific Accountability Board case involving a "swastika incident": (1) a document referred to as a "Management's Investigation"; (2) a document in which the "Accountable Official" requested a security investigation; (3) a Report of Investigation (ROI) related to the security investigation; (4) a copy of proposed disciplinary action; and (5) a copy of final disciplinary action.  Danielson Decl., Ex. 17 at 1.

Kreischer's Affidavit contains a lengthy description of the response to this request.  Three different offices were assigned to provide responses to this request, which they did in August, September, and October 2012.  Kreischer Affid. at ¶ 24(a).  In one office's response, documents related to requested items (4) and (5), referring to proposed and final disciplinary action, were produced but information was withheld under Exemption 6 and some information was identified

as not being responsive to the request and redacted.  Id. at ¶ 24(b).  In another office's response,

the record responsive to requested item (3), referring to the ROI, was withheld in full under

Exemption 6.  Id.  The third office responded that no records related to requested item (1),

referring to the "Management's Investigation" could be located and the failure to locate it meant it

had likely been disposed of in accordance with FAA records retention requirements.  Id.  None of

the three offices addressed documents requested in item (2).  Id.  In one office's response to

Plaintiff's request, the subject of this investigation was inappropriately identified by name.  Id. at

¶ 24(b) n.8.

        In response to Plaintiff's appeal, the agency produced an email from the Accountable

Official asking for a Security Investigation, which addressed requested item (2).  Id. at ¶ 24(c).[4]

In regard to requested item (1), Plaintiff was informed that this particular record was subject to a

five-year retention period in accordance with the FAA's records disposition manual and that

because the disposition date of the record occurred before Plaintiff's initial request, it had likely

been destroyed according to that schedule.  Id. at ¶ 24(d).  Nonetheless, a search was conducted

at the FAA's Northwest Mountain Office of Human Resources, the office files of the facility

where the incident occurred, and in the files of the several managers in the chain of command of

the individual who was the subject of the investigation.  Id.  The record was not located.  Id.  The

agency is unaware of any other locations where the record would logically be located.  Id.

        In regard to requested items (4) and (5) which are draft and final letters of discipline, the

agency, in response to Plaintiff's appeal, continued to assert a privacy exemption in order to

--------------------------------------------

        [4]  Kreischer states that the agency has now agreed to provide a copy of the email with
complete "header" information such as date, time, and list of recipients.  Kreischer Affid. at ¶
24(k)-(l).

17 - OPINION & ORDER

protect the identity of the individual who was the subject of the disciplinary action. Id. at ¶ 24(e).

Thus, while records were produced, the name of the subject, the name and address of the facility

where the incident occurred, and the facility manager's name were redacted. Id.

Kreischer explains that even though the name of the subject of the investigation had been

inappropriately disclosed by the FAA, it continues to withhold the privacy-related information

under Exemptions 6 and 7(C) because it does not want to compound the previous error in

disclosing the name by releasing additional information that is covered by the exemptions. Id. at

¶ 24(f). Further, he states that portions of these records were redacted as non-responsive because

they did not pertain "in any way to the AB case in question[.]" Id. at ¶ 24(e). Thus, those

portions of the records are outside the scope of Plaintiff's initial request. Id.

Next, in regard to the ROI which is responsive to requested item (3), the agency did not,

in responding to Plaintiff's appeal, reconsider its previous decision to withhold production of that

document. Pl.'s Aug. 8, 2013 Mem., Ex. 21; Kreischer Affid. at ¶¶ 24(g) - (I). Kreischer

explains that an ROI is developed by the appropriate FAA Security Office based on a thorough

investigation and contains a detailed narrative of the investigation as well as names of witnesses

and their statements. Kreischer Affid. at ¶ 24(g). The ROI at issue here involves the

investigation of a mid-level employee, and, according to Kreischer, while other records

containing enough information to inform the public of the nature as well as the resolution of the

issue have been released, the information contained in the ROI is substantially more detailed and

potentially more embarrassing and damaging to the subject of the investigation, as well as to the

witnesses who provided statements in regard to the investigation. Id. at ¶ 24(h). Kreischer

asserts that the individual who is the subject of this investigation and whose identity is known

has a significant interest in keeping the graphic and explicit details of this incident confidential in order to avoid any further public embarrassment or stigma. Id. Kreischer further asserts that the individuals who provided witness statements have a privacy interest in keeping their statements confidential. Id. at ¶ 24(I).

Kreischer notes that in Plaintiff's November 2, 2012 appeal, Plaintiff stated that he sought production of this ROI because learning of the allegations involved in the swastika incident would allow him to compare the handling of the case with his own case. Id.; see also Pl.'s Aug. 8, 2013 Mem., Ex. 20-2 n.2 (Plaintiff stated in his appeal that he wished to know the allegations which triggered the production of the ROI because those allegations "will shed light on the handling of my own personnel case[.]"). Kreischer suggests that this is a personal interest, not a public interest, and furthermore, any public interest has been served by release of the records provided, as well as by the AB Case Report which was provided to Plaintiff in connection with a separate FOIA request. Id. at ¶ 24(I).

Plaintiff argues in his own summary judgment motion that Defendants must provide minimally redacted copies of all records, including a minimally redacted copy of the ROI and the memorandum requesting the ROI. In response to Defendants' motion, Plaintiff focuses his argument on the ROI and the portions of the letters proposing and implementing discipline which the agency redacted as being non-responsive to Plaintiff's request. These are the only documents in this particular FOIA request that Plaintiff addressed at oral argument.

In regard to his initial requested item (1) seeking a copy of a "Management's Investigation," Plaintiff fails to create an issue of fact regarding the agency's inability to locate the record responsive to this request. Plaintiff himself asserts that management closed this case

on April 20, 2007, more than five years before Plaintiff's initial July 23, 2012 request. Plaintiff

does not challenge the application of the five-year records retention policy or suggest that

Defendants failed to properly search for the document. As to his initial requested item (2)

seeking a copy of the security investigation request, Defendants' submissions demonstrate that

Plaintiff received a copy of the only document responsive to that request and that a copy with the

complete heading will be provided. Plaintiff makes no further argument regarding requested

item (2).

As to the letters proposing and implementing discipline provided in response to requested

items (4) and (5), Plaintiff makes no specific objection to the redactions of the name of the

subject, the name and address of the facility where the incident occurred, and name of the facility

manager. Plaintiff does not dispute that these records are personnel or similar files. They

contain information related to a particular person. The employee who is the subject of the

discipline has a significant privacy interest in keeping his or her name confidential. While the

employee's name was already inadvertently released, I agree with Defendants that if an

exemption justifiably applies to redact information in these documents protecting the identity of

the employee, it should be redacted from other documents so as not to compound the error that

was already made. Even assuming that Plaintiff articulates a cognizable public interest in these

documents rather than an interest related to his own case, the privacy interest of the employee

subjected to discipline clearly outweighs the public interest. Information about the proposed

discipline and the discipline as implemented was properly released because it sheds light on the

FAA's performance of its duties. The public is adequately informed about the FAA's handling of

personnel matters with the release of these documents as redacted.

20 - OPINION & ORDER

As for the portions of the documents the FAA redacted as non-responsive, Plaintiff's argument is that because the original request sought the *entire* disciplinary letters of both the draft and final versions, "it makes no sense that content in these letters is redacted as 'not responsive.'" Pl.'s Aug. 8, 2013 Mem., Ex. 20-3 (Nov. 2, 2012 Appeal); see also Pl's Resp. to Defs.' Mot. at 16 (noting that the original FOIA request requested the documents without reference to limited portions of the documents).

What Plaintiff overlooks is that his original request sought records related to an incident in which, according to Plaintiff, a "CPC at a Washington ATC facility allegedly marked a swastika and made Hitler references about a management official." Danielson Decl., Ex. 1 at 17. To the extent the proposed discipline letter or final discipline letter contained information not related to that particular incident, such information would not be responsive to Plaintiff's request, regardless of whether he requested the "entire" letter without limitation.

Finally, as to the ROI, Plaintiff, because of his familiarity with his own ROI, suggests that there are several documents comprising the ROI which should be produced. First, he states the ROI includes an "Investigative Review Record" which he states will identify FAA officials who borrowed an ROI copy for review and which contains no personal information. Second, he indicates the ROI should include correspondence by an FAA security official forwarding the completed ROI for review by selected FAA officials. Third is a "Form 1600-32" which "lays out the allegations and also identifies the investigating official." Pl.'s Resp. to Defs.' Mot. at 15 n.11. Plaintiff concedes that the name of the subject being investigated needs to be redacted, but argues that all other contents should be released because such contents relate to facts forming the basis for initiating an investigation. Id. Fourth are "citations" to FAA conduct standards. Id. Fifth is

a "summary of findings" which Plaintiff asserts should be fully released after the subject's name

and witness names are redacted.  Id. at n.13.  Sixth are "facts pages," which Plaintiff states should

be fully released after the names of the subject and witnesses are redacted.  Id. at n.14.  Seventh,

he states that the ROI should contain an index of exhibits which he asserts should have

redactions only for the subject and witness names.  Id. at n.15.  Finally, he asserts that for

exhibits within the ROI, they should be produced, subject to "minimal" redactions.

Plaintiff argues that the public has an interest in seeing that the FAA has been disparate in

its discipline of air traffic controllers.  He suggests reasonable and responsible citizens should be

made aware that contrary to the FAA's representation, the air controller workforce is not fairly

and justly managed.

In reply, Defendants note that an ROI is kept in a Privacy Act System and is retrieved by

the name of the subject of the investigation.  Kreischer Affid. at ¶ 24(g).  The FAA will release

the full ROI to the subject of the investigation under the Privacy Act, subject to any appropriate

exemptions countenanced by the Privacy Act.  Id. at n.9.  It typically withholds under

Exemptions 6 and 7(C), any part of an ROI from a third party request.  Id.  A limited exception is

when a witness requests his or her own statement in which case the FAA releases only that

portion of the ROI.  Id.

With their Reply Memorandum, Defendants supplied a copy of the Letter of Decision

which was produced to Plaintiff in response to item (5) of this FOIA request, to argue that it has

released sufficient information to let the public know how the government handled the situation

by suspending the employee for thirty days.

The Letter of Decision is dated June 5, 2007.  Defs.' Reply Mem., Attchmt. 2.   The

22 - OPINION & ORDER

names of the recipient of the letter as well as the letter's author, are redacted. Id. at 1. The letter

identifies the recipient as an "Air Traffic Control Specialist." Id. It notes that the recipient was

previously informed of a proposal to suspend him/her for thirty days "for the following . . . [two

lines redacted] and inappropriate behavior." Id. The author states he/she reviewed the

investigatory file and has given consideration to the information the recipient presented in a

written reply to the proposed suspension. Id. The author then states that he/she finds that the

reasons cited in the agency's proposed suspension letter are supported by the evidence as stated in

the report of investigation. Id.

      The author then states that in the recipient's response letter, the recipient elaborates on a

number of issues, none of which, according to the author, mitigated the infractions specified in

the suspension proposal. Id. The author then writes several paragraphs in the format of "Reason

#" followed by "Specification" paragraphs. Id. at 2-3. For example, there's a paragraph that

starts with "Reason #1" followed by three paragraphs called "Specification 2," "Specification 3,"

and "Specification 4." Id. at 1-3. The contents of each of these paragraphs is redacted as being

unresponsive to the particular FOIA request. Id. However, the paragraph starting with "Reason

#4: Inappropriate Behavior" is not redacted in full. Instead, only names appear to have been

blacked out. Id. at 4. This mostly unredacted paragraph refers to the alleged "Hitler" remark and

explains why the FAA determined that the subject of the investigation engaged in inappropriate

behavior. Id. The letter continues with an explanation of the justification for the suspension with

sporadic redactions including what appear to be the letter recipient's location of current

employment and additional names. Id. at 4.

      Based on the production of information responsive to the request, Defendants argue that

the significant privacy interests of the subject of the investigation as well as the witnesses in keeping their identities confidential outweighs the public interest. Thus, Defendants contend that the entire ROI was properly withheld under Exemption 6. Additionally, Defendants argue that under Exemption 7, which is triggered if the information can be characterized as an enforcement proceeding, the ROI was properly withheld. Defendants note that the FAA investigated its employee for violating FAA Standards of Conduct and the investigation constitutes an enforcement proceeding making withholding of the ROI under Exemption 7(C) appropriate.

Plaintiff does not dispute that the ROI is a personnel or similar file or that the subject of the investigation and witnesses have privacy interests that deserve protection. The public interest here is not a strong one. Plaintiff himself concedes that he desires the information to compare Defendants' handling of the two personnel matters. I agree with Plaintiff that the public has some interest in a public agency's fair and even treatment of its employees. However, that interest is quite attenuated compared to the public interest in airline industry safety. Given the significant privacy interests at stake and a weak public interest the names of the subject of the investigation and any witnesses, and any other facts and information in the ROI that could lead to the identity of those names, are properly redacted under Exemption 6.

Following oral argument, I reviewed the entire eighty-six page ROI *in camera*. It contains almost all of the components noted by Plaintiff with the exception of what Plaintiff calls the "Investigative Review Record." It contains a significant amount of material that is not responsive to Plaintiff's request which, as noted above, was limited to the "swastika incident" and the Hitler comment. It also contains a significant amount of information which could lead to the identity of the investigated employee as well as witnesses. However, given that Defendants

found it appropriate to release some information to Plaintiff about the incident, it would be

inconsistent to not order Defendants to release additional, consistent information about this

incident provided that all identifying information is redacted.  The ROI contains some additional

details about the incident that are not already contained in the information previously provided in

response to this request but which cannot be considered detrimental to employees' privacy

concerns.  Release of such additional information will still protect the employees' privacy

interests while also allowing public access to information about how the agency handles

personnel matters.

Thus, I order Defendants to redact the ROI consistent with this Opinion and as more fully

explained below.  In order to ensure that Defendants redact the appropriate information and do

not redact more or less than that, I order Defendants to submit a proposed redacted copy to the

Court *in camera* within ten days of the date of this Opinion.  This Court will then review the

proposed redacted copy and make a final determination as to what portions of the ROI will

actually be ordered produced to Plaintiff.

By way of example, on page FAA-1560-A1 and 1560-A2, the only information that

should be provided to Plaintiff is the title of the document, the "Handling Instructions" in Part 1,

and the information Part II limited to the middle box containing instructions about when the

attached material must be returned.   On page 1560-A4, the "FAA Form 1600-32," Defendants

should redact everything except (1) the top right-hand box stating that the document is the ROI;

(2) the single sentence under the "Allegation" section; (3) all information in the "Citation"

section except information indicating where the Form was distributed and who signed it.  On

page 1560-A5, noted as "FAA Form 1600-32-1," and containing various policy and conduct

25 - OPINION & ORDER

standards, policies implicated by the swastika incident or Hitler comment should be produced.  In the "Summary of Findings" and "Facts" on pages 1560-A6 to 1560-A9, Defendants should redact everything except information related to the swastika incident or Hitler comment, as well as every name and all other information which could lead to the identification of the subject employee or any other employees who provided information.  In the Index of Exhibits seen at pages 1560-A11 and 1560-A12, all names and any other information which would reveal the identity of the named subject and witnesses should be redacted as well as any information not related to the swastika incident or Hitler comment.  In the "Record of Interview" documents, only those portions of those interviews in which the swastika incident or the Hitler comment are noted need to be produced, again with all identifying information redacted.   Defendants should follow these examples and apply the same principles to the entire ROI document.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

26 - OPINION & ORDER

CONCLUSION

Defendants' motion for summary judgment [27] is granted in part and denied in part.

Plaintiff's motion for summary judgment [30] is granted in part and denied in part.  The claims

related to all FOIA requests except FOIA Request No. 2012-2082 and FOIA Request No. 2012-

7031, are dismissed on Plaintiff's oral motion.  Defendants' motion as to FOIA Request No.

2012-2081 is granted.  Plaintiff's motion as to this same request is denied.  Defendants' motion as

to FOIA Request No. 2012-7031 is granted except as to the ROI.  Plaintiff's motion as to FOIA

Request No. 2012-7031 is denied except as to the ROI.  Defendants shall submit a proposed

redacted copy of the ROI to this Court *in camera* within ten days of the date of this Opinion &

Order.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

Marco A. Hernandez
United States District Judge